UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

In re:

**Marilyn Munzberg and
Walter C. Munzberg,**
         **Debtors.**

Chapter 13 Case
# 07-10560

Filed & Entered
On Docket
September 29, 2010

*Appearances:*    Rebecca Rice, Esq.    Martin A. Mooney, Esq.
                  Cohen & Rice                 Deily, Mooney & Glastetter, LLP
                  Rutland, VT                  Albany, NY
                  For the Debtors             For the Creditor

**ORDER
SUSTAINING OBJECTION TO CONFIRMATION ON REMAND**

On June 3, 2008, this Court entered a memorandum of decision and order (doc. ## 27, 28) holding that the negative equity portion of the claim of DaimlerChrysler Financial Services Americas, LLC (the "Creditor") against Marilyn and Walter C. Munzberg (the "Debtors") was not secured by a purchase-money security interest (a "PMSI") in the Debtors' property, and therefore could be bifurcated (colloquially known as "crammed down") in the Debtors' chapter 13 plan pursuant to 11 U.S.C. §§ 506 and 1325(a).[1] The decision overruled in part, and sustained in part, the Creditor's objection to confirmation of the Debtors' Chapter 13 plan (doc. # 14). The Creditor filed an appeal (doc. # 31), and the Debtor filed a cross-appeal (doc. # 36).

Upon motion by the parties, the District Court stayed the briefing schedule for the appeal and cross-appeal until further Order of the District Court following issuance of the opinion of the Second Circuit in the matter of In re Peaslee, 373 B.R. 252 (W.D.N.Y., 2007), which raised the same question of whether negative equity could be secured by a PMSI for purposes of "the hanging paragraph" of § 1325(a) (# 1:08-cv-160, doc. # 5). In connection with the appeal in Peaslee, the Second Circuit certified the following question to the New York Court of Appeals:

> Is the portion of an automobile retail installment sale attributable to a trade-in vehicle's 'negative equity' a part of the 'purchase-money obligation' arising from the purchase of a new car, as defined under New York's U.C.C.?

Peaslee, 547 F.3d 177, 186 (2d Cir. 2008).

The state's highest court answered that question in the affirmative, over a vigorous dissent by Judge Robert S. Smith. Peaslee, 913 N.E.2d 387 (N.Y. 2009). Accordingly, on October 9, 2009, the

---

[1] All statutory references in this Oder refer to Title 11 United States Code (the "Bankruptcy Code"), unless otherwise indicated.

1

Second Circuit ruled that:

> The New York Court of Appeals' answer to our certified question is determinative of the case before us. We now know that, under New York law, negative equity is considered a purchase-money obligation and therefore included in a PMSI. Accordingly, because the other conditions for avoiding cramdown under the hanging paragraph were not contested by the parties, debtor-appellants' entire claims, including those portions attributable to the payoff of negative equity on their trade-in vehicles, must be treated as secured claims. As a result, creditor-appellees are immune from cramdown and bifurcation of their full security interest in debtor-appellants' cars, including that portion deriving from the negative trade-in value of their prior cars.

Peaslee, 585 F.3d 53, 57 (2d Cir. 2009).

On March 30, 2010, the United States District Court for the District of Vermont entered an order (doc. # 57) vacating this Court's decision and remanding the matter to this Court for further consideration in light of Peaslee. In its decision, the District Court also referred this Court's attention to six decisions from other Circuit Courts of Appeals and one from a Bankruptcy Appellate Panel adjudicating the question of whether negative equity may be secured by a PMSI for purposes of the crucial hanging paragraph, all of which determined that for purposes of that § 1325(a) provision, the negative equity component of a vehicle lender's debt is secured by a PMSI and thus is exempt from bifurcation and cramdown under § 506. See In re Howard, 597 F.3d 852 (7th Cir. 2010); Ford Motor Credit Co. v. Dale (In re Dale), 582 F.3d 568 (5th Cir. 2009); Ford Motor Credit Co. v. Mierkowski (in re Mierkowski), 580 F.3d 740 (8th Cir. 2009); Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279 (10th Cir. 2009); In re Price, 562 F.3d 618 (4th Cir. 2009); Graupner v. Nuvell Credit Corp. (In re Graupner), 537 F.3d 1295 (11th Cir. 2008); Ford Motor Credit Co. LLC v. Miller (In re Miller), 2009 Bankr. LEXIS 3627, 2009 WL 3863337 (10th Cir. B.A.P. Nov. 19, 2009).

On July 16, 2010, just four months after the District Court issued its remand order, the Ninth Circuit weighed in on the question and reached the opposite conclusion. See AmeriCredit Fin. Servs. v. Penrod (In re Penrod), 611 F.3d 1158 (9th Cir. 2010). It held that the portion of a vehicle lender's claim attributable to negative equity may not be secured by a PMSI, and thus may be bifurcated under § 506. Id. at 1161, 1164. The Ninth Circuit pointed out that its rationale was aligned with what it described as "some strong dissents" in the eight decisions now issued by circuit courts to date, as well as the dissent Judge Smith had penned in the New York Court of Appeals decision. Id. at 1160, 1162–63. The Ninth Circuit's rationale emphasized the necessity of analyzing the issue in the context of not only state law, but of bankruptcy law as well, and concluded that the bankruptcy principles compelled a determination that the hanging paragraph should not be read to protect the negative equity included in an auto loan transaction from bifurcation in chapter 13 plans:

2

> . . . [the creditor's] position is not consistent with the Bankruptcy Code. Under the Bankruptcy Code, security interests are given preferential treatment to the extent that the obligation relates to the receipt of truly new value, not just old obligations that have been repackaged. The negative equity charges related to [the debtor's] 1999 Ford Explorer would not qualify as new value under 11 U.S.C. § 547(a)(2). Therefore, [the creditor's] position is not in harmony with federal bankruptcy principles.

Id. at 1164. This created a split among the Circuits.

However, based upon the Peaslee decision of the Second Circuit, and the facts and record of this case (all set forth in the earlier decisions), THIS COURT FINDS that it is bound by Peaslee to conclude that the Creditor's claim is secured by a PMSI for purposes of the hanging paragraph of § 1325(a) and therefore may not be bifurcated under § 506.[2]

Accordingly, IT IS HEREBY ORDERED that the Creditor's objection to confirmation (doc. # 14) is sustained on remand.

IT IS FURTHER ORDERED that the Creditor's amended proofs of claim filed on June 13, 2008 (Claim ## 1-2, 1-3), pursuant to this Court's decision, are stricken, and the original proof of claim filed on September 11, 2007 (Claim # 1-1), is allowed in accordance with this Order.

IT IS FURTHER ORDERED that the Debtors shall file a motion to modify plan and a modified plan by October 28, 2010, consistent with the terms of this Order.

**SO ORDERED**.

September 29, 2010  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

---

[2] The Second Circuit's decision in Peaslee was based, in part, upon the New York Uniform Commercial Code, but ruled only on the question of whether negative equity could be secured by a PMSI for purposes of the hanging paragraph. This Court is specifically not making any findings as to whether, based upon Peaslee, negative equity may be secured by a PMSI under the Vermont Uniform Commercial Code. This ruling is limited to the scope of a PMSI for purposes of determining whether certain auto lender claims may be crammed down in chapter 13 plans, under the §1325(a) hanging paragraph.