Formatted for Electronic Distribution                                                                 Not for Publication

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF VERMONT

In re:

    Walter C. Munzberg and  
    Marilyn Munzberg,  
        Debtors.

Chapter 13 Case  
# 07-10560

Filed & Entered  
On Docket  
January 21, 2011

| Appearances: | Rebecca A. Rice, Esq. | Martin A. Mooney, Esq. |
|---|---|---|
| | Cohen & Rice | Deily, Mooney & Glastetter, LLP |
| | Rutland, VT | Albany, NY |
| | For the Debtors | For the Creditor |

### ORDER
### ADDRESSING MOTION FOR RECONSIDERATION, VACATUR, AND CLARIFICATION

On June 3, 2008, this Court issued a decision (doc. ## 27, 28) holding that the negative equity portion of the claim of DaimlerChrysler Financial Services Americas, LLC (the "Creditor") against the Debtors was not secured by a purchase money security interest (or "PMSI") and could be crammed down under 11 U.S.C. §§ 506 and 1325(a),[1] and overruling in part and sustaining in part the Creditor's objection to confirmation of the Debtors' plan. On appeal, the District Court entered an order (doc. # 57) vacating this Court's decision and remanding the matter to this Court for further consideration in light of Reiber v. GMAC, LLC (In re Peaslee), 585 F.3d 53 (2d Cir. 2009).

On remand, this Court found that it was bound by Peaslee to conclude that the Creditor's claim was secured by a PMSI for purposes of the hanging paragraph of § 1325(a) and therefore could not be bifurcated under § 506. Accordingly, on September 29, 2010, the Court sustained the Creditor's objection to confirmation on remand (doc. # 58). The Court limited its ruling to the scope of a PMSI for purposes of determining whether certain auto lender claims may be crammed down in chapter 13 plans under the § 1325(a) hanging paragraph, and specifically did not make any findings as to whether negative equity may be secured by a PMSI under the Vermont Uniform Commercial Code ("UCC").

The Debtors filed the instant motion, captioned as a motion to reconsider, on October 13, 2010 (doc. # 60). The Debtors' motion also seeks to vacate the Court's September 29, 2010 Order pursuant to Federal Rule of Civil Procedure 60(b)(6), and further seeks clarification of the reasoning this Court

---

[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

1

applied in its Order. On October 21, 2010, this Court entered an Order directing the parties to file memoranda of law (doc. # 61). The Debtors filed a memorandum of law on November 15, 2010 (doc. # 63). On December 13, 2010, the Creditor filed a responsive memorandum (doc. # 64). The Debtors filed a reply memorandum on December 20, 2010 (doc. # 65), and the Court took the matter under advisement. The Court treats the Debtors' motion as one seeking reconsideration, vacatur, and clarification, and will first address the Debtors' request for reconsideration.

The standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that the Court has already fully considered "where the moving party seeks solely to relitigate an issue already decided," Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995), to "plug gaps in an original argument or to argue in the alternative once a decision has been made," In re Newberry, 2007 Bankr. LEXIS 2611, *2, 2007 WL 2247588, *1 (Bankr. D.Vt. Aug. 2, 2007), or to give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised in the original motion. In re Bird, 222 B.R. 229, 235 (Bankr. S.D.N.Y. 1998) (citing Fed. Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir.1986)). A court may reconsider an earlier decision when a party can point to an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Pichardo v. Ashcroft, 374 F.3d 46, 55–56 (2d Cir. 2004) (citation and quotation omitted); Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (cautioning that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason [be] permitted, to battle for it again") (citation omitted). Ultimately, the question is a discretionary one and the court is not limited in its ability to reconsider its own decisions prior to final judgment. Virgin Atl. Airways, Ltd., 956 F.2d at 1255.

The Debtors request reconsideration of the Court's Order entered on September 29, 2010 (doc. # 58) on the basis that the Debtors interpret Peaslee to require an analysis under the Vermont UCC. The Debtors do not point to any intervening change of controlling law, new evidence, or a need to correct a clear error or prevent manifest injustice. In fact, the Debtors concede that they do not "allege the presence of an intervening change in controlling law, new evidence, or clear error" (doc. # 63, p. 2). Accordingly, the Court finds that the Debtors have not established grounds warranting reconsideration.[2]

The Court next turns to the Debtors' motion to vacate the September 29, 2010 Order pursuant to

---

[2] To the extent that the Debtors assert that the Court has misconstrued Peaslee, i.e., that the Court has committed legal error, such an argument is more appropriately raised on appeal rather than as a motion for reconsideration. Alternatively, to the extent that the Debtors want the Vermont UCC to specifically provide that negative equity is not part of a PMSI, this is a matter for the legislature and is beyond the purview of this Court.

2

Rule 60(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 9024.  Rule 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  The Second Circuit has cautioned that Rule 60(b) motions are disfavored, and that "Rule 60(b)(6) is properly invoked only when 'extraordinary circumstances' justify relief or 'when the judgment may work an extreme and undue hardship.'"  Empresa Cubana Del Tabaco v. General Cigar Co. Inc., 385 Fed. Appx. 29, 30 (2d Cir. 2010) (citing Pichardo v. Ashcroft, 374 F.3d at 55; Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986); United Airlines, Inc. v. Brien, 588 F.3d 158, 176 (2d Cir. 2009)).  Here, the Debtors concede that they "do not allege that their inability to follow the Court's reasoning rises [to] the level of 'extraordinary circumstances' or 'extreme and undue hardship'" (doc. # 63, p. 2).  Thus, the Court finds that the Debtors have failed to establish grounds for vacating the September 29, 2010 Order under Rule 60(b)(6).

Finally, the Court turns to the Debtors' request for clarification of its reasoning in its September 29, 2010 Order.  The issue in Peaslee was whether the negative equity portion of a trade-in vehicle was part of a PMSI arising from the sale of the vehicle, and thus protected from cramdown by the "hanging paragraph" of § 1325.  Peaslee, 585 F.3d at 55–56.  Since a PMSI is not defined in the Bankruptcy Code, the Second Circuit in Peaslee found that state law governed its definition, and certified to the New York Court of Appeals the following question: "Is the portion of an automobile retail installment sale attributable to a trade-in vehicle's 'negative equity' a part of the purchase-money obligation' arising from the purchase of a new car, as defined under New York's U.C.C.?"  Peaslee, 547 F.3d 177, 184, 186 (2d Cir. 2008).  The Second Circuit invited the New York Court of Appeals to consider the relevance, if any, of the New York Motor Vehicle Retail Installment Sales Act ("MVRISA").  Id. at 186.

The New York Court of Appeals answered the question in the affirmative, finding that "negative equity" fit within "purchase-money obligation" as defined in New York UCC § 9-103(a) and Official Comment 3.  Peaslee, 913 N.E.2d 387, 389–90 (N.Y. 2009).  The New York Court of Appeals looked to the MVRISA as further support, but did not rely upon it in reaching its answer.  See id. at 390.  Based upon the New York Court of Appeals' affirmative answer to the certified question, the Second Circuit in Peaslee held that:

> because the other conditions for avoiding cramdown under the hanging paragraph [of § 1325(a)] were not contested by the parties, debtor-appellants' entire claims, including those portions attributable to the payoff of negative equity on their trade-in vehicles, must be treated as secured.  As a result, creditor-appellees are immune from

3

cramdown and bifurcation of their full security interest in debtor-appellants' cars, including that portion deriving from the negative trade-in value of their prior cars.

Peaslee, 585 F.3d at 57.

The provision of the UCC at issue in Peaslee, UCC § 9-103(a)(1)–(2) and Official Comment 3, are substantively identical in New York and Vermont.  See N.Y. UCC § 9-103(a), Comment 3; see also 9A V.S.A. § 9-103(a), Comment 3.  This Court does not speculate as to whether the Vermont Supreme Court would interpret the pertinent provisions of the UCC in the same way as New York's highest court.  In Peaslee, the Second Circuit relied on a New York court interpretation of a New York statute.  However, the ultimate focus of the decision is on the bankruptcy law question of whether the negative equity portion of a trade-in vehicle is part of a PMSI arising from the sale of the vehicle, and thus protected from cramdown by the "hanging paragraph" of § 1325, which the Second Circuit answered in the affirmative.

For the reasons set forth above, the Court denies the Debtors' motion to vacate, denies the Debtors' motion for reconsideration, and provides the foregoing clarification of this Court's Order entered on September 29, 2010 (doc. # 58).

SO ORDERED.

_____

January 21, 2011  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

4